

**SO ORDERED,**

**Judge Selene D. Maddox**

**United States Bankruptcy Judge**

**The Order of the Court is set forth below. The case docket reflects the date entered.**

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF MISSISSIPPI

| | |
|---|---|
| **IN RE: KENNETH BROWN HOOD** | **CASE NO.: 16-14511-SDM** |
| **DEBTOR** | **CHAPTER 12** |
| **HELENA CHEMICAL COMPANY** | **PLAINTIFF** |
| **v.** | **ADVERSARY PRO. NO.: 19-01065-SDM** |
| **HOOD et al** | **DEFENDANT** |

## MEMORANDUM OPINION AND ORDER DENYING AS MOOT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DKT. #45) AND GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DKT. #141)

This adversary proceeding comes before the Court on competing motions for summary judgment and the responses, replies, and joinders filed to those competing summary judgment motions. The first matter to come before the Court is the *Defendants'*[1] *Motion for Summary Judgment* (Dkt. #45), the *Defendants' Statement of Material Facts* (Dkt. #46), and the *Defendants' Brief in Support of the Motion for Summary Judgment* (Dkt. #53). The Plaintiff, Helena Chemical Company (the "Plaintiff" or "Helena") filed its *Response to Defendants' Motion for Summary*

---

[1] The original Defendants in this case were Mary Lou Dilworth ("Dilworth") and Odelle Hood ("Odelle"). As explained in more detail below, Odelle died after the initiation of this adversary proceeding, and therefore, is no longer a party.

*Judgment* (Dkt. #49) and its *Response to the Statement of Material Facts* (Dkt. #50). The Chapter 12 Trustee filed a *Joinder* (Dkt. #52) to the Plaintiff's *Response to Defendants' Motion for Summary Judgment*. The second matter to come before the Court is the *Plaintiff's Motion for Summary Judgment* (Dkt. #141), *Supporting Brief* (Dkt. #142), and *Statement of Material Facts* (Dkt. #143). Several pleadings were filed in response to the Plaintiff's Motion for Summary Judgment, including a *Joinder* (Dkt. #144) filed by the Chapter 12 Trustee and the *Defendants'* (now Dilworth and Hood Family Farm, LLC) *Memorandum in Opposition* (Dkt. #151) and *Response to the Statement of Material Facts* (Dkt. #152). The Debtor also filed *Joinders* (Dkt. #s 152 and 153) to the *Defendants' Memorandum in Opposition* and *Response to the Statement of Material Facts*.

The Court conducted its most recent hearing on March 24, 2022, on the above pleadings, and at the conclusion of the hearing, took the matter(s) under advisement. After reviewing all of the pleadings, including the briefs and exhibits, the Court is now prepared to rule. Based on the arguments made in the pleadings and presented at the hearing, the Court finds that the *Defendants' Motion for Summary Judgment* (Dkt. #45) should be denied as moot and the *Plaintiff's Motion for Summary Judgment* (Dkt. #141) should be granted in part and denied in part.

## I. JURISDICTION

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334(a), 28 U.S.C. §157(a) and the Standing Order of Reference signed by Chief District Judge L.T. Senter and dated August 6, 1984. This is a "core proceeding" under 28 U.S.C. § 157(b)(2)(A)(1) (matters concerning administration of the estate).

## II. FACTS AND PROCEDURAL HISTORY

The Court will attempt to briefly summarize the factual and procedural history leading up to this Memorandum Opinion and Order.[2] To begin, Helena filed its *Complaint for Sanctions for Violation of the Automatic Stay* (the "Complaint") (Dkt. #1) in this adversary proceeding on October 22, 2019. In its Complaint, Helena alleges that the Debtor had a vested remainder interest, subject to defeasance, in agricultural property commonly referred to as the "Home Place".[3] At the time of the filing of the Complaint, Odelle was the life tenant. The Defendant, Dilworth, was power of attorney for Odelle. Helena also alleges that on or about June 25, 2019, Dilworth, acting as Odelle's power of attorney, executed a quitclaim deed to the Home Place, which conveyed Odelle's interests to Defendant, Hood Family Farm, LLC ("Hood Family Farm").[4] According to Helena, this transfer divested the Debtor of his vested remainder interest and, at the same time, stripped the bankruptcy estate of its property, i.e., the vested remainders. Thus, Helena contends

---

[2] This adversary proceeding is related to several other bankruptcy cases and adversary proceedings. The Debtor's brothers filed for bankruptcy relief in the following cases: William Cary Hood, Case No. 16-14506; Howard Allen Hood, Case No. 16-14509; and Curtis G. Hood, Case No. 16-14507. Helena filed similar if not the same complaints for violation of the automatic stay against William Hood, Adv. Pro. 21-01008 and Howard Hood, Adv. Pro. No. 21-01007. Helena also filed two complaints seeking to determine assets of the estate and for injunctive relief against the Debtor, Adv. Pro. No. 19-01010; William Hood, Adv. Pro. No. 19-01011; and Howard Hood, Adv. Pro. No. 19-01012. Because those adversary proceedings hinge on the outcome of the Court's ruling in this adversary proceeding, the Court stayed those adversary proceedings.

[3] According to the will of Odelle's husband, H. Brown Hood, (the "Will") and the parties' pleadings, the Home Place consists of approximately 1,190 acres of farmland. At the hearing on March 24, 2022, the Defendants asserted that Odelle owned some property in fee simple—the Court is unsure whether this fee simple interest is included in the 1,190 acres or whether Odelle owned additional acreage in fee simple outside of the 1,190 acres known as the Home Place.

[4] To alleviate any confusion for the purposes of this Memorandum Opinion and Order, Odelle was the mother of all four Debtors (Kenneth Hood, William Hood, Howard Hood, and Curtis Hood) and Dilworth. Dilworth, consequently, is the Debtor's sister. Hood Family Farm is a limited liability company in which Dilworth is a 50% owner. The remaining 50% ownership in Hood Family Farm belongs to Wilton Hood, a non-debtor brother.

the execution and recording of the quitclaim deed and subsequent transfer violated the automatic stay under 11 U.S.C. § 362.

On January 10, 2020, Defendants Odelle and Dilworth filed their Answer to Complaint (Dkt. #15) denying most of the allegations except that the transfer did take place. Further, the Defendants assert that the Home Place is not part of the bankruptcy estate, and the bankruptcy filing had no effect on Odelle's rights to transfer fee simple title to the Home Place. After some ancillary discovery, procedural motions, and the filing of the *Defendants' Motion for Summary Judgment*, Helena filed a *Suggestion of Death of Co-Defendant, Odelle Hood* (Dkt. #54) and a *Motion for Substitution of the Parties* (the "Motion to Substitute") (Dkt. #55). In those motions, Helena informed the Court of Odelle's death, and that the proper Defendants to substitute in Odelle's place were the bankruptcy estates of Kenneth Hood, Howard Hood, and William Hood. Helena argued that the bankruptcy estates were the proper parties because, despite the Debtor and his two brothers having failed to list their interests in the Home Place, their vested remainder interests in the Home Place had matured in proportionate fee simple interests.[5]

About a month later, Dilworth filed a *Response* (Dkt. #65) to the Motion to Substitute. Likewise, the Debtor filed a *Response* (Dkt. #67) to the Motion to Substitute. In both responses, Dilworth and the Debtor disagree that the respective Hood bankruptcy estates are the proper parties to substitute because the brothers did not commit any acts that constitute a violation of the automatic stay. The Debtor further argued that Odelle's estate should be the substituted party. After a hearing on the Motion to Substitute, the Court found that Odelle's estate was the proper defendant to be substituted. See *Order Denying in Part Motion for Substitution of the Parties* (Dkt. #55).

---

[5] Of course, Helena's argument assumed that the transfer of the Home Place was not valid.

At the same hearing, and somewhat related to the question of which parties should be included as defendants in this adversary proceeding, the Court also entertained Dilworth's *Motion to Dismiss for Lack of Subject Matter Jurisdiction* (the "Motion to Dismiss") (Dkt. #64). The Court denied the Motion to Dismiss finding that it has jurisdiction to determine whether the Defendants violated the automatic stay. But the Court also held that the transferee of the Home Place, Hood Family Farm, was a necessary party and should be joined if feasible. See *Order Denying Motion to Dismiss for Lack of Subject Matter Jurisdiction* (Dkt. #87). The Court granted Helena leave to file an amended complaint to join Hood Family Farm, and Helena complied and filed its *First Amended Complaint for Sanctions for Violation of the Automatic Stay* (the "Amended Complaint") (Dkt. #96) on April 19, 2021.

The Amended Complaint, like the Complaint, asked this Court for entry of an order sanctioning the Defendants in the form of attorney's fees and expenses for pursuing the Amended Complaint. The Amended Complaint also requests that the Court find that any conveyance of the quitclaim deed to Hood Family Farm is void due to the alleged automatic stay violation. The Debtor filed an *Answer and Defenses* (Dkt. #117) to the Amended Complaint, essentially arguing that while the Debtor had an interest in the Home Place, that interest was remote, contingent, and subject to transfer. The Debtor also alleges that while Odelle was a life tenant of the Home Place, she had "additional interests" in the Home Place.[6] The Debtor further argues that Helena as Plaintiff lacks standing to invoke the provisions of the automatic stay, and that, while the Debtor

---

[6] Again, it is not entirely clear to the Court what other fee simple interest Odelle could have possessed in the Home Place. Based on the terms of the Will, Odelle possessed a life estate interest in the entirety of the Home Place (1,190 acres) with Odelle's children, both debtor and non-debtor, holding vested remainder interests totaling 100%: Kenneth Hood (3.87%); Howard Hood (6.80%); Curtis Hood (18.31%); William Hood (51.68%); Wilton Hood (9.67%); and Dilworth (9.67%). Despite this confusion, it is not entirely relevant to the Court's ruling articulated below.

was served with process in connection with the Amended Complaint, he is not a necessary, indispensable, or permissive party-in-interest in this adversary proceeding.

The parties engaged in discovery up until Helena filed the instant Plaintiff's Motion for Summary Judgment on November 1, 2021. Helena's arguments in the Plaintiff's Motion for Summary Judgment and Supporting Brief are summarized as follows:

(1) At the time of the filing of the Debtor's petition in December of 2016, the Debtor and at least two of his brothers, Howard Hood and William Hood, possessed remainder interests, specifically vested remainder interests subject to divestment, in the Home Place;

(2) The automatic stay applied to those vested remainder interests because the vested remainder interests were property of the bankruptcy estate at the time of the filing of the petition; and

(3) When Dilworth, acting as Odelle's power of attorney, executed and recorded a quitclaim deed conveying the Home Place to Hood Family Farm, she violated the automatic stay.

Helena argues that because the facts supporting the above legal conclusions are not in dispute, summary judgment is proper. Specifically, as asserted in Helena's Statement of Material Facts, the following facts are not in dispute to support the legal conclusions above:

(1) H. Brown Hood, Odelle's husband and father of Defendant Dilworth and this Debtor, died on November 23, 1992, while a resident of Bolivar County, Mississippi.

(2) H. Brown Hood executed a Will dated May 24, 1982.

(3) The Will was admitted to probate on December 2, 1992, in the Chancery Court of Bolivar County, Mississippi, First Judicial District.

(4) The Estate of H. Brown Hood consisted in part of an interest in certain farmland located in the First and Second Judicial Districts of Bolivar County, Mississippi, known as the Home Place.

(5) In Article 5 of the Will, he devised to his wife, Odelle, a life estate in the Home Place, with a 3.87% remainder to this Debtor, a 6.80% remainder to Howard A. Hood, a debtor in Case No. 16-14509, and a 51.68% remainder to William Cary Hood, a debtor in Case No. 16-14506.[7]

(6) H. Brown Hood granted Odelle the power to sell, lease, or exchange her interest the Home Place.[8]

(7) Odelle granted a Power of Attorney to her daughter, Dilworth, on February 25, 2011.

(8) On December 30, 2016, this Debtor filed his bankruptcy petition.

(9) Since the petition, the Home Place has been farmed by entities either owned or managed by this Debtor, Howard Hood, and/or William Hood.

(10) On June 26, 2019, Odelle, by and through her daughter and attorney-in-fact, Dilworth, transferred a fee simple interest in the Home Place to Hood Family Farm, a Mississippi Limited Liability Company.

---

[7] The Court is not certain why there is no reference to Curtis Hood's vested remainder interests in the undisputed facts. The Court notes that Helena did not file an adversary proceeding relating to a potential violation of the automatic stay in Curtis Hood's underlying bankruptcy case. The Court is aware, however, that the confirmation order in Curtis Hood's bankruptcy case provides that the Chapter 12 Trustee can reopen the bankruptcy case to address the outcome of certain adversary proceedings.

[8] The terms of the Will as it relates to Odelle and the Home Place are as follows: "I devise and bequeath all of my residuary estate . . . to my wife, Odell[e] Hood, for the period of her natural life . . . [and] I hereby give my said wife full power and authority in her discretion to hold and retain any property coming to her under this Article in the same form of investment as that in which it may exist at the time of my death; and I also give to my said wife full power and authority in her discretion, to sell at private or public sale, to lease and to exchange the whole or any part of such property . . . at such market prices and on such terms and conditions as to her may seem best . . . ." *The Will*, Ex. B (Dkt. #141).

(11) Hood Family Farm is an LLC wholly owned by Defendant Dilworth and another of her non-debtor brothers.

See *Statement of Material Facts* (Dkt. #143).[9] Helena also attached nine exhibits to its Plaintiff's Motion for Summary Judgment, including:

(A) The Estate Records for H. Brown Hood from Bolivar County Chancery Court;

(B) H. Brown Hood's Will;

(C) Power of attorney from Odelle to Dilworth;

(D) The Debtor's bankruptcy petition;

(E) Discovery Responses;

(F) The quitclaim deed executed and recorded by Dilworth acting as Odelle's power of attorney;

(G) Excerpt of Dilworth's deposition from October of 2019;

(H) Excerpt of Dilworth's deposition from June of 2020; and

(I) Odelle's Suggestion of Death

Based on the facts and documents above, Helena argues that the Court should void the quitclaim deed in violation of the automatic stay and award Helena all its attorney's fees as sanctions incurred in prosecuting this adversary proceeding. Helena asserts that even if Odelle and Dilworth validly exercised their rights under Mississippi law, any act to obtain possession of, or to exercise control over, estate property violates the automatic stay. According to Helena, the "act"

---

[9] The Defendants responded to Helena's Statement of Material Facts but the only objections to the 11 undisputed facts listed above were how (5) and (6) were characterized as to the parameters of Odelle's right to transfer the Home Place in the Will. See Dkt. #152. The Court finds these "denials" not really disputes as to those facts because Helena concedes that Odelle did have the power of disposition to convey fee simple title to the Home Place, albeit if done under the parameters of the Will.

in question was Dilworth's execution and recording of the quitclaim deed, which transferred the Home Place to Hood Family Farm and divested the Debtor of his vested remainder interest. Despite this argument, Helena also disputes Odelle's right to transfer the Home Place under the terms of the Will because the transfer was not a sale, lease, or exchange. Further, Helena argues that Dilworth acted outside the scope of the terms of her power of attorney because, if the transfer was not a sale, lease, or exchange, it was a gift, and gifts can only be made if there is an established pattern of giving.[10] Finally, Helena posits that based on the confidential relationship between Dilworth and Odelle, Mississippi law on *inter vivos* transfers mandates that the transfer is void.

The Defendants, now Dilworth and Hood Family Farm, filed their Memorandum in Opposition and Response to Statement of Material Facts. To begin, the Defendants attempt to incorporate facts and legal arguments as pled in the Defendants Motion to Summary Judgment.[11] The Defendants argue that Odelle owned a life estate in the Home Place with the power to convey the Home Place "at her discretion" without the requirement to account for the disposition of the proceeds. The Defendants also argue that like Odelle, the Debtor could have sold his defeasible remainder interest during Odelle's life, but that the defeasible remainder interest was unmarketable and without value—hence why the Chapter 12 Trustee never attempted to liquidate the Debtor's interest during the pendency of the underlying bankruptcy case. Responding to Helena's arguments concerning voiding the quitclaim deed under Mississippi law, the Defendants argue that Helena

---

[10] The Court is somewhat confused by this argument because there would always need to be an "initial gift" to establish any pattern of giving.

[11] Based on the Court's finding below, procedurally, the Court is not considering the facts and law as presented in the Defendants Motion for Summary Judgment. Nevertheless, the Court has considered all legal and factual arguments based on the burden of proof from the perspective of Helena as the moving party. In other words, the Court is aware of all legal and factual arguments as it relates to whether summary judgment is proper at this juncture within the confines of its automatic stay violation analysis.

failed to plead either facts or law in its Amended Complaint to support allegations of fraud, undue influence, or lack of consideration.

Due to the procedural issues in this adversary proceeding, the Court set the Plaintiff's Motion for Summary Judgment for hearing to consider the parties' arguments. The Court appreciates the parties' patience in what would have been a more expedient determination on the competing summary judgment motions if not for the procedural issues. As with a few other legal issues related to the Debtor's underlying bankruptcy case and interrelated adversary proceeding(s), the facts and corresponding legal issues that gave rise to this adversary proceeding are somewhat unique. The Court is tasked with addressing these issues at this juncture within the confines of a summary judgment motion.

### III. DISCUSSION

**A. Summary Judgment Standard**

A party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting former Fed. R. Civ. P. 56(c)); Fed. R. Civ. P. 56(c)(1). The party seeking summary judgment bears the burden of demonstrating to the court the absence of a genuine issue of material fact. *Id.* at 323. Concerning materiality, the Supreme Court has stated that "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *St. Amant v. Benoit*, 806 F.2d 1294, 1297 (5th Cir. 1987) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). All reasonable doubt as to the existence of a genuine issue of material fact "must

be resolved against the moving party." *Kennett-Murray Corp. v. Bone*, 622 F.2d 887, 892 (5th Cir. 1980) (quoting *Keiser v. Coliseum Properties, Inc.*, 614 F.2d 406, 410 (5th Cir. 1980)).

> Rule 56 provides:
>
> (e) If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
> . . . .
>
> (2) consider the fact undisputed for purposes of the motion;
> (3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it;
> . . . .

Fed. R. Civ. P. 56(e). Further, Rule 56(f) permits a court to issue a judgment independent of the motions filed, and after giving notice and a reasonable time to respond, the court may:

> (1) grant summary judgment for a nonmovant;
> (2) grant the motion on grounds not raised by a party; or
> (3) consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute.

Fed. R. Civ. P. 56(f).

## B. The Defendants' Motion for Summary Judgment and the Amended Complaint

As stated above, Helena filed its Amended Complaint after the Court's ruling on the Motion to Dismiss. The Court is tasked with deciding how to address the Defendants' Motion for Summary Judgment in light of Helena's Amended Complaint. An amended complaint supersedes the original complaint as the operative live pleading and renders a motion for summary judgment on the original complaint moot. *Lofty, LLC v. McKelly Roofing, LLC*, No. 2:17-CV-159-D-BR, 2018 WL 6004307, at *1 (N.D. Tex. Nov. 15, 2018) (citing *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994) ("An amended complaint supersedes the original complaint and renders it of no legal effect unless the amended complaint specifically refers to and adopts or incorporates by reference the earlier pleading."); *Griffin v. Am. Zurich Ins. Co.*, 697 F. App'x 793, 797 (5th Cir. 2017) ("Once

filed, that amended complaint rendered all earlier motions, including [the plaintiff's] motion for partial summary judgment, moot."); and *Stredwick v. Dallas Margarita Soc'y, Inc.*, No. 3:12-CV-623-F, 2012 WL 12893430, at *1 (N.D. Tex. June 27, 2012) ("The filing of an amended complaint generally renders pending motions moot.").

Nevertheless, a court may exercise its discretion to consider a motion for summary judgment on the original complaint where the "amended complaint fails to cure the deficiencies of the original complaint." *Lofty, LLC*, 2018 WL 6004307, at *1 (citing *Zavala v. Carrollton-Farmers Branch Indep. Sch. Dist.*, 2017 WL 3279158, at *1 n.1 (N.D. Tex. Aug. 2, 2017) (recognizing that a court may treat a motion for summary judgment directed to a superseded complaint as if it were addressed to the amended complaint where defects in the superseded complaint reappear in the amended complaint) and *Methodist Hosps. of Dallas v. Wal-Mart Stores, Inc.*, No. Civ.A. 3:02–CV–0656–, 2003 WL 21266775, at *1 n.2 (N.D. Tex. May 30, 2003) (same)).

Having carefully reviewed the applicable law, the Court concludes that the Defendants' Motion for Summary Judgment should be denied as moot.[12] Here, Helena's Amended Complaint superseded the Complaint and became the operative pleading. Helena amended the Complaint due to this Court's order requiring the addition of a necessary party, which was one of the Defendants' arguments for why the adversary proceedings should be dismissed. The Amended Complaint cured the deficiencies in the Complaint, and therefore, there is no basis for the Court to consider the Defendants' Motion for Summary Judgment. The Court is aware that procedural issues have plagued this adversary proceeding, and this is just another example. Even so, the Court can still address the issues at this stage in this adversary proceeding presented in the Plaintiff's Motion for Summary Judgment, albeit with Helena as the moving party.

---

[12] The Court is denying the Defendants' Motion for Summary Judgment without prejudice.

**C. The Plaintiff's Motion for Summary Judgment**

The Court now turns to the Plaintiff's Motion for Summary Judgment. As discussed above, Helena, as the moving party, has the burden to show the absence of genuine issues of material fact. The Court agrees, at least in part, with Helena's Supporting Brief in that the issues to be addressed at the summary judgment stage are whether genuine issues of material fact exist as to: (1) the Debtor's interest in the Home Place at the time of the filing of the bankruptcy petition in his underlying bankruptcy case; (2) whether that interest was property of the bankruptcy estate; and (3) whether the Defendants violated the automatic stay by executing and recording the quitclaim deed transferring or conveying the Home Place to Hood Family Farm.

*1. Mississippi Law on Vested Remainders*

The Court will first address the Debtor's interest in the Home Place held at the time of the filing of the petition in his underlying bankruptcy case. Accordingly, the Court will turn to state law to determine the nature of the Debtor's interest. See *Butner v. U.S.*, 440 U.S. 48, 54 (1979) (holding that property interests are created and defined by state law). In Mississippi, a gift of a life estate interest to a named person creates a "vested remainder on the death of the Testator." *In re Estate of Baumgardner*, 82 So.3d 592, 600 (Miss. 2012) (acknowledging Mississippi law favors vesting of remainders, and that remainder interests are only contingent if the testator clearly intended); *McClelland v. Bank of Clarksdale*, 119 So.2d 262, 267 (Miss. 1960) (holding that a testator's gift of a life estate with the remainder to a named person creates a vested remainder at the testator's death notwithstanding the life tenant's power of defeasance). Further, vested remainders may be ascertainable once a contingency happens, but the happening of a contingency subsequent will not affect its vested character. *Hudson v. Moon*, 732 So.2d 927, 931 (Miss. 1999)

(holding that a remainder interest is none the less vested even though it is liable to be divested or destroyed).

Here, the Court need not look much further than the terms of the Will itself to ascertain what the Debtor's interest in the Home Place was at the time of the filing of the bankruptcy petition. The Will named Odelle as a life tenant with the right of disposition under certain circumstances.[13] The Will also specifically named the Debtor as holding a 3.87% remainder interest. Despite Odelle's divestment power, and in accordance with the relevant law, the Debtor held a vested remainder interest subject to Odelle's right of divestment. The Court will not belabor this point because in more recent pleadings and at the hearing, the Defendants do not appear to challenge this position. While the Debtor argued in his Answer and Defenses that his interest in the Home Place was "remote, contingent, and subject to transfer", that argument simply does not pass muster and is contrary to Mississippi law based on the undisputed facts presented here, i.e., the Will. The mere fact that Odelle had the right to transfer the Home Place according to the terms of the Will, and thereby destroy the Debtor's remainder interest, does not alter the nature of the Debtor's vested remainder interest.[14] Therefore, the Court finds that summary judgment is appropriate as to the first issue: the Debtor possessed a vested remainder subject to divestment or defeasance in the

---

[13] Mississippi law recognizes the right of a life tenant to convey fee simple title to the property if granted that authority by the testator. See generally *Kyle v. Wood*, 86 So.2d 881 (Miss. 1956). This is true even if the life tenant transfers the property with the purpose of defeating the rights of remaindermen. *Id.* at 723.

[14] Put in another way and harkening back to the days of property law in a classroom setting: a devise by A to B for life with remainder at B's death to C creates a vested remainder to C at the death of A, subject to B's life estate. When H. Brown Hood died, Odelle obtained a life estate with the power of divestment in the Home Place. There was no contingency present for the Debtor's remainder to vest, for example, reaching a certain age. While the Debtor's remainder interest was subject to being divested by the disposition terms of the Will, that fact does not render the remainder interest "contingent" in the legal sense. Therefore, at the time the Debtor filed his bankruptcy petition, the Debtor held a vested remainder subject to Odelle's power of divestment.

Home Place at the time he filed his bankruptcy petition on December 30, 2016. There are no genuine issues of material fact indicating otherwise.

*2. Vested Remainders are Property of the Bankruptcy Estate*

Having established that the Debtor held a vested remainder subject to divestment at the time of the filing of the bankruptcy petition, the Court now turns to whether that vested remainder interest was property of the bankruptcy estate at the filing of the Debtor's bankruptcy petition. The Bankruptcy Code determines what is property of the bankruptcy estate, which includes all legal or equitable interests of the debtor in property at the commencement of a bankruptcy case. 11 U.S.C. § 541(a)(1);[15] *In re Burgess*, 438 F.3d 493, 496 (5th Cir. 2006). Courts have found that remainder interests are property of the bankruptcy estate. See, e.g., *In re Amaral*, 550 B.R. 1, 12 (Bankr. D. Mass. 2016) (holding that the debtor's vested remainder interest was property of the bankruptcy estate under an expansive interpretation of § 541(a)). Further, remainder interests can be valued, and a trustee may be authorized to sell vested remainder interests held by a debtor. *In re Wells*, 448 B.R. 909, 913 (Bankr. W.D. Tex. 2011) (citing *Wheeler v. U.S.*, 116 F.3d 749, 767 (5th Cir. 1997) (holding that a sale of a remainder interest for actual value constitutes full and adequate consideration for estate tax purposes) and *In re Sargent*, 337 B.R. 661, 667 (Bankr. N.D. Ohio 2006) (finding that the trustee may sell the debtor's vested remainder interests subject to a life estate, but the trustee could not sell the property free and clear of the interest in the life estate)).

Armed with the relevant law, the Court concludes that the Debtor's vested remainder interest was property of the bankruptcy estate. Much of the argument from the Defendants and the Debtor stems from the fact that the Home Place itself was not property of the bankruptcy estate at

---

[15] Except noted otherwise, all statutory references will be to Title 11 of the United States Code.

the time of the filing of the Debtor's bankruptcy case, especially considering Odelle was still alive

and a life tenant under the Will. While that may have significance in fashioning a remedy for any

potential automatic stay violation, that argument is not relevant in determining whether the

Debtor's vested remainder interest is property of the bankruptcy estate.[16] Now that the Court has

"officially" determined that the Debtor did possess a vested remainder interest, the issue of whether

that vested remainder is property of the estate is purely a legal determination. There are no genuine

issues of material fact that the Debtor's vested remainder interest was property of the bankruptcy

estate at the time of the filing of the petition under § 541. Thus, the Court finds summary judgment

is appropriate on that issue in favor of Helena.

*3. The Automatic Stay Violation*

        The Court is now tasked with deciding whether genuine issues of material fact exist as to

the Defendants' alleged violation of the automatic stay. In other words, is there any factual dispute

as to whether the Defendants' execution and recording of the quitclaim deed violated the automatic

stay? The analysis starts with the relevant law on automatic stay violations. Section 362(a) of the

Bankruptcy Code provides, in relevant part, that "a petition under section 301, 302, or 303 of this

title . . . operates as a stay, applicable to all entities, of . . . any act to obtain possession of property

of the estate or of property from the estate or to exercise control over property of the estate. . ." 11

U.S.C. § 362(a)(1), (3). The automatic stay is effective at the filing of the bankruptcy petition. *In

re Okedokun*, 593 B.R. 469, 525 (Bankr. S.D. Tex. 2018) (internal citations omitted). The

---

[16] The Defendants also argue the cases Helena cites in support of its position—that the
Debtor's vested remainder interest is property of the bankruptcy estate—are not applicable here
because none of those cases involve a situation where the life tenant has exercised his or her
disposition right. The Court finds this argument irrelevant as to whether the Debtor's vested
remainder interest is/was property of the bankruptcy estate. Simply because Odelle exercised her
power under the Will does not change the Court's analysis under § 541.

automatic stay is designed to protect creditors as well as debtors. *Brown v. Chesnut (In re Chesnut)*, 422 F.3d 298, 301 (5th Cir. 2005). In the Fifth Circuit, a claim for violation of the automatic stay is present when: (1) the defendant [knew] of the existence of the automatic stay; (2) the defendant's acts [were] intentional; and (3) the defendant's acts . . . violated the stay. *Id.* at 302. A willful violation of the automatic stay does not require a specific intent to violate the automatic stay, only that the acts which violated the stay were intentional. *Id.*

### a. The Defendants knew of the existence of the automatic stay

Based on the totality of the facts presented to this Court in the pleadings, documents, and arguments at the hearing, it is undisputed that the Defendants knew of the automatic stay's existence. As mentioned above, four brothers are currently involved in bankruptcy cases that were filed in 2016. The execution and recording of the quitclaim deed took place in June of 2019. While the Debtor did not originally schedule his vested remainder interest in the Home Place, the Debtor's conduct is not really at issue. Based on the evidence presented to this Court, the Defendants acted to transfer the Home Place in response to the related adversary proceedings filed by Helena, which sought to determine whether the Debtor's remainder interest was property of the bankruptcy estate. Further, the Defendants are essentially arguing that *despite* the automatic stay's existence, Dilworth, acting as power of attorney for Odelle, had a state law right to transfer the Home Place and thereby divest the Debtor's vested remainder. Nothing presented to this Court signals a dispute over whether the Defendants knew that the automatic stay existed at the time of the execution and recording of the quitclaim deed. In fact, based on the Defendants' pleadings and arguments presented at the hearing, the Defendants recognize that the automatic stay was in place at the time of the transfer. There is simply no genuine issue of material fact that the Defendants

did not know that the automatic stay existed at the time the Defendants transferred the Home Place to Hood Family Farm.

### b. The Defendants' acts were intentional

The Defendants have admitted either in depositions or interrogatory responses that the act of executing and recording the quitclaim deed attempting to or conveying the Home Place to Hood Family Farm was intentional and done with the purpose of taking care of Odelle and/or protecting Odelle's ability to receive rental income derived from the Home Place. The Defendants have not presented any contrary facts to this Court suggesting that the execution and recording of the quitclaim deed was not done intentionally. Therefore, there is no genuine issue of material fact as to this legal conclusion.

### c. The Defendants' acts violated the automatic stay

In addition to the findings above that the Defendants knew of the automatic stay's existence and that they intentionally acted to execute and record the quitclaim deed, which conveyed the Home Place and destroyed the Debtor's vested remainder interest, the Court finds there is no factual dispute that the act of executing and recording the quitclaim deed violated the automatic stay. Helena correctly argues that regardless of the contractual rights under Mississippi law or other justifications asserted by the Defendants, the automatic stay prohibits the ability of creditors and other persons from exercising their valid state law rights. The Court finds analogous the hypotheticals cited by Helena, e.g., an attempted foreclosure, repossession, or garnishment, but only in so far as to support the proposition that a state statutory or contractual right cannot be used as a defense to justify an act in violation of the automatic stay if the automatic stay is applicable.

The Court notes that the Debtor and the Defendants are also correct that the Home Place itself was not property of the bankruptcy estate at the time of the filing of the bankruptcy petition

and at the time of the execution and recording of the quitclaim deed.  To the contrary, only the

Debtor's vested remainder interest was property of the bankruptcy estate. The facts underlying this

adversary proceeding are different than most automatic stay violation situations where creditors or

other parties attempt to obtain possession or exercise control of bankruptcy estate property (for

example, a parcel of land, a home, a vehicle, etc.), or even where a debtor attempts to transfer

bankruptcy estate property to another person or entity to avoid creditors.

The Court wants to be clear about what happened here: the conveyance of the Home Place

did not "transfer" the Debtor's vested remainder interest in the Home Place to Hood Family Farm.

The execution and recording of the quitclaim deed merely divested the Debtor's remainder interest

and the bankruptcy estate of that interest. Here, the act of executing and recording the quitclaim

deed was an attempt, at a minimum, to exercise control over bankruptcy estate property but only

to the extent that it divested the Debtor's vested remainder interest and, therefore, the bankruptcy

estate of that interest. That, again, is the extent of the automatic stay violation, and the distinction

is important to the remaining analysis and in fashioning any remedy available to Helena.[17]

*4. Remedy for the Automatic Stay Violation and Potential Damages*

Having found that there are no genuine issues of material fact that the Defendants' acts

violated the automatic stay, the Court must now address several issues: (1) the appropriate legal

remedy; (2) whether the validity of the transfer under Mississippi law has any bearing on such a

legal remedy; and (3) any other damages which may be justified at this stage in the adversary

---

[17] The Court notes that this adversary proceeding could have been avoided had the Defendants sought relief from the automatic stay before executing and recording the quitclaim deed. At the least, the Defendants could have requested a comfort order to determine the applicability of the automatic stay as to the Debtor's remainder interest. If the Defendants are correct in that the value of the Debtor's vested remainder interest is nominal at best in relation to value or benefit to the bankruptcy estate, especially with the life tenant still living at the time of the transfer, the parties would likely not be litigating over these issues.

proceeding. In the Fifth Circuit, ordinarily, an act in violation of the automatic stay is voidable, not void. *In re Dillon*, 619 B.R. 357, 362 (Bankr. S.D. Miss. 2020) (citing *Sikes v. Global Marine, Inc.*, 881 F.2d 176, 178 (5th Cir. 1989). Actions in violation of the automatic stay are voidable because bankruptcy courts have the power to annul the automatic stay under § 362(d). *Okedokun*, 594 B.R. at 547 n. 93 (citing *Barnes v. Barnes (In re Barnes)*, 279 F. App'x 318, 320 n. 1 (5th Cir. 2008)). Voidable actions are "invalid and of no effect unless and until the action is made valid by subsequent judicial action annulling the automatic stay." *Id.* (citing *Jackson v. Priority Trs. Servs. Of Miss., L.L.C.*, 392 B.R. 666, 671 (Bankr. S.D. Miss 2008).

The Court will begin with the appropriate legal remedy for the Defendants' automatic stay violation in the fact specific circumstances which are presented before it in this adversary proceeding. While there appears to be a split among circuits[18] concerning whether an action taken in violation of the automatic stay is "void" or "voidable", as stated above, the Fifth Circuit has held that acts taken in violation of the automatic stay under the Bankruptcy Code are voidable rather than void. *Sikes*, 881 F.2d at 178; *Picco v. Global Marine Drilling Co.*, 900 F.2d 846, 850 (5th Cir. 1990); *Jones v. Garcia*, 63 F.3d 411, 412 (5th Cir. 1995). The Court must briefly address the distinction between void and voidable because Helena is requesting that the Court void the transfer or quitclaim deed as a remedy for the automatic stay violation. In *Sikes*, the Fifth Circuit distinguished between void and voidable, stating that "[b]y strict definition that which is void is nugatory and of no effect and cannot be cured; that which is voidable may be either voided or cured." *Sikes*, 881 F.2d at 178. The rationale given for actions in violation of the automatic stay

---

[18] The Court recognizes there is contrary authority and circuit splits regarding the legal notion that actions in violation of the automatic stay are voidable as opposed to void. See 3 COLLIER ON BANKRUPTCY ¶ 362.12 (16th ed. 2022).

being voidable rather than void is that, again, bankruptcy courts have the power to annul the automatic stay under § 362(d).[19] *Okedokun*, 594 B.R. at 547 n. 93 (internal citations omitted).

A glance at this definition and rationale seems to indicate that, upon a finding that an act or transfer violated the automatic stay, a bankruptcy court has the power to "void or cure" the transfer, or, in other words, "undo" the violative transfer as an appropriate remedy for the harm effectuated to the bankruptcy estate. This interpretation, however, is a misunderstanding because this result assumes that the transfer made or act taken in violation of the automatic stay is valid. Rather, "it can be said that 'void' and 'voidable' deal with a transaction or occurrence that was *invalid or had no legal effect when it occurred, but might be made valid by a subsequent judicial act or ratification.*" *Pierce v. Pierce (In re Pierce)*, 272 B.R. 198, 207 (Bankr. S.D. Tex. 2001) (emphasis added). In other words, such an action taken in violation of the automatic stay is "invalid and of no effect unless and until the action is made valid by subsequent judicial action annulling the automatic stay." *Abusaad v. Powers (In re Abusaad)*, 309 B.R. 895, 899 (Bankr. N.D. Tex. 2004). The Fifth Circuit addressed the confusion created by this concept in *Jones*, writing that "[i]t is the effect of the stay *itself* which is voidable, subject to the broad discretion afforded a bankruptcy judge under section 362." *Jones*, 63 F.3d at 412 n. 3. Thus, upon a finding that an act or transfer has violated the automatic stay, such an act or transfer is found to be invalid when it occurred unless a bankruptcy court determines that the act or transfer should be made valid by annulment of automatic stay under § 362(d).

While the general rule that a transfer or conveyance in violation of the automatic stay is invalid when an automatic stay violation occurs, the Court simply cannot apply that general rule

---

[19] Bankruptcy courts, in other words, have the power to grant retroactive relief from the automatic stay.

as a remedy in this adversary proceeding because it is not applicable based on the facts presented

here. Courts which have found transfers invalid as an appropriate legal remedy for violation of the

automatic stay are distinguishable in that the acts in question dealing with transfers of bankruptcy

estate property are not transfers which merely strip the bankruptcy estate of vested remainder

interests. Just the opposite: those transfers or conveyances in question concern the transfer of real

or personal property which is, itself, bankruptcy estate property. The Court is not aware of any

legal authority, and Helena has not presented any to this Court, requiring it to find that an

underlying transfer is invalid based on an automatic stay violation which divests debtors of a future

possessory interest in property, i.e., property of the bankruptcy estate, regardless of the vested

nature of the remainders.

The Court believes a hypothetical is needed to further illustrate its position. If the Home

Place itself was property of the bankruptcy estate, and the Debtor or another party transferred the

Debtor's fee simple interest to a limited liability company owned by non-debtor siblings, the Court

would have no issue applying the general rule of voidability and its effect on the transfer. But those

are simply not the facts presented to this Court. On a similar note, the Court is not sure why Helena,

as the moving party, would want a result where voidability is the remedy. Fifth Circuit precedent

stands for the proposition that bankruptcy courts have considerable discretion in validating

transfers found to be invalid under § 362. If by order or decree, this Court can retroactively validate

the alleged "invalid" transfer at issue here as a result of the automatic stay violation, the end result

could very well be a "no harm no foul" scenario.[20] The Court does not find that result appropriate

either because the Defendants did violate the automatic stay.

---

[20] The Court is aware that this is an oversimplification. According to § 362(d), a party in
interest must request such relief and the Court must have a basis to grant retroactive relief from
the automatic stay. 11 U.S.C. § 362(d).

The Court will now briefly address the arguments concerning the validity of the conveyance or transfer under Mississippi law. As to this issue, the Court finds Helena's arguments made in its pleadings problematic. On the one hand, Helena argues that whether Odelle or Dilworth had the right to convey the Home Place and validly exercised those rights is not at issue in determining whether an automatic stay violation occurred. In fact, Helena calls this a "misdirection." See *Plaintiff's Motion for Summary Judgment* (Dkt. #141). But on the other hand, Helena attacks the rights of Odelle (under the Will) and Dilworth (acting as Odelle's power of attorney) to transfer the Home Place. [21] Regardless of what the Court sees as conflicting arguments, it is obvious to the Court that Helena would like it to set aside the conveyance or transfer. Why? At the time of the execution and recording of the quitclaim deed transferring the Home Place to Hood Family Farm, the Debtor merely possessed a vested remainder interest. Now that Odelle has passed away, and if the transfer is set aside, the Debtor's vested remainder interest has matured or ripened into a fee simple interest. It is not lost on the Court that, based on the acreage and numerical figures presented in the parties' arguments, the Home Place itself could be worth a substantial sum.

Nevertheless, while Helena attempts to dispute the validity of the transfer based on the terms of the Will or the limitations of Dilworth's capacity as Odelle's power of attorney as methods through which this Court should set aside the transfer, the Court declines to make a ruling on the validity of the transfer under state law for several reasons. First, the allegations in Helena's Amended Complaint and the relief sought stems from the Defendants' violation of the automatic

---

[21] This contradiction is further expounded when Helena argues in its Supporting Brief that to determine whether the execution and recording of the quitclaim deed, i.e., the "act," violates the automatic stay, the Court must determine whether the disposition of the property is valid under state law. The Court simply does not agree. As discussed above, the remedy typically afforded in situations where acts violate the automatic stay is that of voidability—without much consideration of the validity of the act or transfer under state law.

stay under § 362(a)(3) only. As previously discussed, the Court has found that the act of executing and recording the quitclaim deed transferring the Home Place to Hood Family Farm was an act that violated the automatic stay and, as such, nothing further is left to be determined except damages and/or sanctions. The Court will address that issue briefly below. The Court is more persuaded with the Defendants' arguments that the Amended Complaint should have specified such causes of action if Helena wished for those state law claims to be addressed by the Court. In fact, Helena had the opportunity to do just that in its Amended Complaint, but Helena did not.

Second, the Court does not believe that a determination as to the validity of the conveyance under Mississippi law is a proper exercise of its jurisdiction, as those issues exclusively involve state law determinations between parties that are not debtors or creditors in this Court.[22] While this Court did previously rule that it has subject matter jurisdiction to hear and determine whether there has been a violation of the automatic stay under § 362, such a determination does not necessarily open the door for this Court to make findings regarding a conveyance which involves three non-debtor parties who will also undoubtedly be affected by any ruling from this Court concerning such a conveyance. A determination as to the validity of the transfer under any state law claims should be addressed in a more proper forum, likely in state court.

Further, all of Helena's state law arguments advocating for setting aside the transfer do not question the legality or validity of the actual transfer itself (e.g., defects in the quitclaim deed, etc.), but rather, the Defendants' ability or authority to make the transfer or perform the act in question. This point is significant to the Court as claims for violation of the automatic stay have nothing to do with a party's capacity or ability to act in violation of the automatic stay. In deciding that no

---

[22] The transferors and Defendants, i.e., Odelle, (now her estate), Dilworth, previously Odelle's power of attorney, and the transferee, Hood Family Farm, (including Wilton Hood) are not debtors or creditors in any bankruptcy case.

genuine issues of material fact existed as to whether the Defendants violated the automatic stay, the Court focused on the act itself: the execution and recording of the quitclaim deed. Simply put, this Court's ability to determine whether there has been a violation of the automatic stay does not hinge on the validity of the transfer at issue here. This conclusion is even further supported by the fact that the execution and recording of the quitclaim deed did not actually transfer property of the bankruptcy estate. The conveyance at issue simply divested the Debtor of his remainder interest and the bankruptcy estate of that same interest. Therefore, the validity of the underlying transfer here is even less important to the Court's automatic stay violation analysis.

It is clear to this Court that while the Amended Complaint is framed as one for sanctions for the violation of the automatic stay, it is really a backdoor attempt to recover bankruptcy estate property similar to an avoidance cause of action. Generally, only trustees and debtors-in-possession—not creditors—have standing to invoke advoidance powers. See *In re Lakeside Corp.*, 139 B.R. 27, 29 (Bankr. D.N.M. 1992) (citing *In re Pointer*, 952 F.2d 82, 87 (5th Cir. 1992); 11 U.S.C. § 549.[23] The Court is not sure why the Chapter 12 Trustee never attempted to bring such a cause of action after the Debtor's bankruptcy case was converted from a case under chapter 11 to chapter 12 in November of 2019 and/or while Odelle was still alive. Maybe the cause of action could not be maintained, or maybe it was timing or the result of a cost/benefit analysis? Whatever the reason, the Court will not venture into such a guessing game.

Finally, what is also clear to this Court is that the quitclaim deed was executed and recorded transferring the Home Place to Hood Family Farm. Until arguments were made in the context of the pending summary judgment motions, it does not appear that any party challenged the

---

[23] Courts, have, however, allowed a creditor to proceed with an avoidance cause of action if the creditor receives court approval upon the showing of extraordinary circumstances. *Id.*

conveyance in state court and no other court has entered an order invalidating or voiding the transfer. At this juncture, the Court is simply tasked with deciding whether there are any genuine issues of material fact as to an automatic stay violation and what the legal effect would be of such a finding. The Court answers the question this way: regardless of the validity of the transfer under state law, no disputed facts exist as to whether the automatic stay violation occurred when the Defendants executed and recorded the quitclaim deed transferring the Home Place to Hood Family Farm. But invalidating the conveyance is not the proper remedy for the automatic stay violation at issue here.  The automatic stay violation did not transfer bankruptcy estate property and only divested the Debtor of his remainder interest, which stripped the bankruptcy estate of that interest.[24]

At this juncture, the Court must determine whether there are any undisputed facts as to potential damages Helena may be awarded for the Defendants' automatic stay violation. Section 362 provides that a person injured by any willful violation of a stay shall recover actual damages, which includes costs and attorney's fees. 11 U.S.C. § 362(k)(1). As to this issue, the Court has no facts in front of it to decide what actual damages to which Helena may be entitled. Could Helena possibly be entitled to what pro rata distributions it could have received from the bankruptcy estate based on the value of the vested remainder interests at the time in which they were divested? The Court cannot, at the summary judgment phase, rule on such an issue, and it is ripe for trial. Further, while Helena argues that sanctions in the form of attorney's fees and costs are appropriate

---

[24] As the Court has indicated in previous orders, it is more concerned with what parties would be liable for an automatic stay violation, the potential loss to the bankruptcy estate *at the time of the transfer*, i.e., what was the potential value of the vested remainder interests, and what remedy and/or damages would be allowed under the Bankruptcy Code. Wading into the validity of the transfer under state law based on the nature of the Amended Complaint would not be an appropriate exercise of this Court's jurisdiction.

damages, Helena has not asserted any amount of attorney's fees and costs, and this Court has no facts in front of it to award that relief on summary judgment. Therefore, in addition to the actual damages issue, the Court finds that any trial should include the determination of the attorney's fees and costs and whether those are justified and reasonable.

## IV. CONCLUSION

Based on the above, the Court finds that there are no genuine issues of material fact as to whether the Defendants violated the automatic stay when they executed and recorded the quitclaim deed, thereby committing an act to obtain possession of or control over the Debtor's vested remainder interest. Nevertheless, the Court will not invalidate the transfer as a remedy for the automatic stay violation, nor will the Court find that the transfer of the Home Place at issue was invalid under Mississippi law. Further, Helena has alleged no facts as to its actual damages or the amount of attorney's fees and costs associated with prosecution of this adversary proceeding, and as such, those two issues are ripe for a trial for the Court to determine what damages are appropriate for the Defendants' automatic stay violation.

Accordingly, it is **ORDERED** that the Defendants' Motion for Summary Judgment (Dkt. #45) is **DENIED AS MOOT** without prejudice. It is further **ORDERED** that the Plaintiff's Motion for Summary Judgment (Dkt. #141) is **GRANTED IN PART** and **DENIED IN PART**. The Defendants committed an automatic stay violation upon the execution and recording of the quitclaim deed. The Court makes no finding as to damages to which Helena may be entitled, and the damages issues shall proceed to trial. The Court will schedule a status hearing or pretrial hearing, if necessary, as to the remaining issues in a separate order.


##END OF ORDER##